UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 2:16-cr-20
    HON. PAUL L. MALONEY

PATRICK ROY WANDAHSEGA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant Patrick Roy Wandahsega is charged with two counts of sexually abusing a child under the age of twelve. This case is set for trial on October 24, 2017. Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court has referred to the undersigned the Government's motion to admit testimony from the victim's treating nurse and treating physician under Fed. R. Evid. 803(4) (ECF No. 66); motion in limine regarding the admissibility of a video and transcript of the victim's forensic interview (ECF No. 68); and motion in limine regarding the admissibility of various statements under Fed. R. Evid. 807 (ECF No. 70). On September 29, 2017, the undersigned held a hearing on these motions. Because the admissibility of the evidence depends on the testimony at trial, the undersigned cannot recommend granting or denying the Government's motions. The purpose of this Report and Recommendation is to identify the evidence and summarize how the Government plans to introduce it at trial.

The victim in this case is Defendant's son—H.W. H.W. was six years old when the alleged offenses occurred in 2015. On December 18, 2015, H.W. told his grandmother, Elizabeth Gudwer, that his father had touched his privates. H.W. also told her that his father

instructed him not to tell anyone because he would go away for a long time. H.W. made this statement while he was spending the weekend at his grandmother's house. According to Ms. Gudwer, she was coloring with H.W. when he told her about the incident. Ms. Gudwer subsequently contacted the Hannahville Police Department.

On December 21, 2015, Child Protective Service Worker Betsy Ruleau conducted a forensic interview of H.W. According to the Government, Ms. Ruleau has conducted approximately seventy forensic interviews and has received forensic interview training from the National Children's Advocacy Center and the United States Department of Justice. At the beginning of the interview, Ms. Ruleau discussed with H.W. the difference between truth and falsehoods. H.W. made no disclosures during this interview and it lasted only ten minutes.

Later that evening, H.W. was staying with Defendant at his apartment. At approximately 7:30 pm, Tonya Maycroft, who has multiple children with Defendant, went over to Defendant's apartment to ask if H.W. wanted to play with her other children.[1] When Defendant answered the door, Defendant appeared drunk and Ms. Maycroft requested to take H.W. for the night. Defendant initially refused. Shortly thereafter, H.W. came to the door wearing only his underwear and gave Ms. Maycroft a hug. H.W. told Ms. Maycroft "something to the effect of 'my dad is doing bad stuff to me.'" (PageID.163.) Defendant eventually allowed H.W. to go with Ms. Maycroft. After leaving the residence, Ms. Maycroft asked H.W. what he meant when he said that his dad was doing "bad stuff." H.W. responded that his dad had touched his genitals and buttocks.

Ms. Maycroft subsequently called the Hannahville Police Department and Officer Adams had a discussion with Ms. Maycroft about taking H.W. to an emergency room. Despite H.W. expressing to Ms. Maycroft that he did not want to go to the hospital, Ms. Maycroft picked

---

[1] At the hearing, the Government stated that Ms. Maycroft was unaware of the alleged incident that occurred the week prior.

up her husband and they brought H.W. to OSF St. Francis Hospital. When they arrived at the hospital, Nurse Stacey Smith was the first to speak with H.W. in the triage area of the emergency department. Nurse Smith asked H.W. "what had happened." (PageID.149-150.) H.W. responded that his dad "did something bad" to him. (PageID.150.) Dr. Alex Judy also spoke with H.W at the hospital. He first asked H.W. why he was at the emergency department, but H.W. did not respond and stared at the ground. Dr. Judy then asked whether H.W. would like the people in the room to leave so they could speak in private. H.W. said that he would. After Ms. Maycroft, her husband, and a nurse left the room, H.W. told Dr. Judy that his father had touched his genitals and penetrated his buttocks with a finger. H.W. continued to tell Dr. Judy that this occurred on two different occasions and that it hurt at the time. When Dr. Judy asked if he could examine H.W., H.W. refused.

The next day, on December 22, 2015, Ms. Ruleau conducted a second forensic interview of H.W. During this interview, H.W. repeatedly said that he was too afraid to talk about the incidents. However, over the course of the hour long interview, H.W. told Ms. Ruleau that (1) "his dad had done something to him that his dad does with girls"; (2) the incidents occurred on "Thursday and Wednesday"; (3) it was a "bad touch"; (4) his "private's" were touched and later clarified that he was touched where "pee" comes from and the "hole" where "poop" comes from; (5) the incidents occurred while he was in his dad's bed; (6) his dad pulled off his underwear and then "did it"; and (7) the touch "kind of hurted." This interview was videotaped.

At the September 27, 2017 hearing, the undersigned discussed with counsel the admissibility of these statements and the order in which the Government plans to introduce them at trial. The Government informed the undersigned that it plans to call H.W. as the first witness in its case-in-chief. The Court has already granted the Government's motion to permit H.W. to

-3-

testify via two-way closed circuit television. (ECF No. 63.) After H.W. testifies, the Government plans to call the witnesses in the following order: (1) Ms. Gudwer; (2) Ms. Maycroft; (3) Ms. Ruleau; (4) Nurse Smith; and (5) Dr. Judy.[2]

The undersigned will first address H.W.'s statements to Ms. Gudwer and Ms. Maycroft. If H.W. testifies to Defendant touching him on two different occasions, the Government will not seek to introduce H.W.'s statements to Ms. Gudwer and Ms. Maycroft for the truth of the matter asserted. Instead, the Government would use these statements when Ms. Gudwer and Ms. Maycroft testify to explain why they acted in the way that they did. Alternatively, the Government may introduce these statements as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B) if H.W's credibility is attacked by Defendant on cross-examination. However, if H.W. is unable to testify to the substance of what occurred with Defendant, the Government seeks to introduce H.W.'s statements to Ms. Gudwer and Ms. Maycroft under Federal Rule of Evidence 807, the residual exception to the hearsay rule.[3] The parties request that the Court determine the admissibility of these statements after H.W. testifies at trial.

The undersigned next addresses H.W.'s statements to Ms. Ruleau that he made during the forensic interview on December 22, 2015. The Government seeks to introduce these statements on the same grounds as H.W.'s statements to Ms. Gudwer and Ms. Maycroft. Therefore, the parties similarly request that the Court determine the admissibility of these statements after H.W. testifies at trial. Defense counsel also stated at the hearing that he may seek

---

[2] The witnesses on this list are only the witnesses related to the Government's motions.
[3] Under Rule 807(a), the court must determine whether "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."

-4-

to introduce H.W.'s statements to Ms. Ruleau that he made during the forensic interview on December 21, 2015.

In addition, the Government seeks to admit a video of the December 22, 2015, forensic interview at trial and to use a transcript of the video as an evidentiary aid without admitting it into evidence. Defendant argues that even if H.W.'s statements to Ms. Ruleau are admitted, the Court should find the video and transcript inadmissible under Federal Rule of Evidence 403 because its probative value "is substantially outweighed" by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In order for a videotape recording to be admitted at trial, "[t]he tape must be authentic, accurate and trustworthy, and 'must be audible and sufficiently comprehensible for the jury to consider the contents.'" *United States v. Wesley*, 417 F.3d 612, 620 (6th Cir. 2005) (quoting *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983)). In order to use a transcript of the videotape recording as an evidentiary aid, the Sixth Circuit prefers that the parties stipulate to the accuracy of the transcript prior to publishing the transcript to the jury. *Robinson*, 707 F.2d at 878. Here, the video of the forensic interview was played during the hearing. The Government also provided the undersigned and defense counsel with a transcript of the video. The video was approximately fifty minutes.[4] After viewing the video and transcript, the undersigned finds that the video was authentic, audible, and sufficiently comprehensible and that the transcript was accurate. Defense counsel agreed with these findings on the record. However, whether the video and the transcript are admissible at trial depends on, first, whether H.W.'s statements to Ms. Ruleau are admitted and, second, whether the video and transcript should be excluded under Rule 403.

---

[4] The Government removed ten minutes of the interview from the video and does not seek to admit that portion at trial.

Finally, the undersigned addresses H.W.'s statements to Nurse Smith and Dr. Judy. The Government seeks to introduce these statements under Federal Rule of Evidence 803(4) regardless of H.W.'s testimony. Under Rule 803(4), a statement is admissible if it "is made for-- and is reasonably pertinent to--medical diagnosis or treatment; and . . . describes medical history; past or present symptoms or sensations; their inception; or their general cause." The Sixth Circuit distinguishes between interviews conducted for the primary purpose of medical diagnosis and interviews conducted for a different purpose, such as obtaining evidence. *United States v. Kappell*, 418 F.3d 550, 556-57 (6th Cir. 2005). "In general, a patient's statement describing how an injury occurred is pertinent to a physician's diagnosis and treatment, but a statement identifying the person who caused the injury 'would seldom, if ever, be sufficiently related.'" *United States v. Gabe*, 237 F.3d 954, 957-58 (8th Cir. 2001) (quoting *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980)). "In cases of sex abuse, however, the identity of the abuser may be relevant to treating the victim's emotional and psychological injuries." *Id.* at 958.

In this case, the undersigned does not have enough information to determine whether H.W. made these statements for the purpose of medical diagnosis. It is clear from the record that H.W. did not want to go to the hospital and he refused to be examined by Dr. Judy. Defense counsel suggested at the hearing that the interview was conducted for the sole purpose of obtaining evidence. He stated that Ms. Maycroft was likely instructed by Officer Adams to take H.W. to the hospital for the purpose of obtaining a statement and that the medical records suggest that Dr. Judy contacted other doctors regarding the proper questions to ask a child abuse victim. However, the Government anticipates that Nurse Smith and Dr. Judy will testify that the interviews

were conducted for the purpose of medical diagnosis.[5] After this initial testimony, the parties will be prepared to make further arguments on the admission of H.W.'s statements.

Accordingly, the undersigned recommends that after H.W. testifies at trial, the Court hear argument from counsel outside of the presence of the jury regarding the admissibility of H.W.'s statements to Ms. Gudwer, Ms. Maycroft, and Ms. Ruleau. Similarly, the undersigned recommends that after the initial testimony of Nurse Smith and Dr. Judy, the Court hear argument outside of the presence of the jury regarding the admissibility of H.W.'s statements to Nurse Smith and Dr. Judy under Federal Rule of Evidence 803(4).

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 4, 2017

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court has granted Dr. Judy leave to testify via video because he currently works in Alaska. (ECF No. 47.)